[Crim. No. 4897.   Second Dist., Div. One.   Jan. 26, 1953.]

THE PEOPLE, Respondent, v. WALTER FRANKLYN GROSS, Appellant.

Walter Franklyn Gross, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

DRAPEAU, J.—In 1948 Walter Franklyn Gross pleaded guilty to violation of section 288 of our Penal Code. He admitted criminal misconduct upon a 9-year-old boy. He also admitted prior felony convictions, for which he served prison terms: burglary, sodomy, and lewd and lascivious con-

duct with a child. At the time of his arrest he had jumped bail in Stockton upon a charge of another sexual crime of the same kind.

Proceedings in the criminal case were suspended. Defendant was adjudged a sexual psychopath, and committed to Camarillo State Hospital.

Portions of the reports of two medical experts who recommended this commitment are as follows:

1. "Subject . . . is a frank homosexual . . .

"There is probably no possibility of rehabilitation. His long sentences at San Quentin and Folsom have had no effect as a deterrent to his compulsion.

"He falls definitely in the category of sexual psychopathy as defined in Section 5500 of the Welfare and Institutions Code, and he should be permanently removed from free association with children or society in a penal or other type of state institution."

2. "This man, in middle life, comes to examination with a history of sexual abnormality covering the greater portion of his life. He has spent nearly fifteen years in prisons and jails for the one recurring offense, and under present conditions can be expected to repeat it again if ever an opportunity is presented to him."

Defendant escaped from Camarillo State Hospital. He was apprehended after a few months of liberty, and was then confined in Mendocino State Hospital.

On July 21, 1952, defendant filed in the superior court (No. 39063) a "Motion for subpoena and writ of attachment." This motion was denied July 23, 1952, and defendant filed notice of appeal from that order the same day. Respondent has moved to dismiss this appeal.

July 24, 1952, the District Court of Appeal, Third District, denied defendant's petition for a writ of mandamus, directing the superintendent of Mendocino State Hospital to report whether defendant was still a menace to others, "on authority of Section 5519 of the Welfare and Institutions Code." (Minutes, p. 4, 112 A.C.A. No. 4.)

September 18, 1952, defendant filed in the Superior Court of Los Angeles, in the criminal proceeding in which he had been adjudged a sexual psychopath, a paper which he called "Motion for Subpoena and Writ of Attachment." He alleged that the superintendent of Mendocino State Hospital arbitrarily refused to certify him as being no longer a menace to society. He referred to section 5519 of the Welfare and

Institutions Code as authority for his motion and prayed that the court proceed, ''in accordance with the statutory proceedings in such case made and provided.''

The judge of the superior court followed the provisions of the section, and requested the superintendent of Mendocino State Hospital to forward to the committing court his opinion as to whether defendant was still a sexual psychopath.

The superintendent reported that defendant was still a sexual psychopath, and was still a menace to society.

The judge then ordered defendant returned to the superior court for further proceedings.

The judge also referred defendant to two medical experts for their reports as to his then psychopathic condition. These experts reported that defendant was still a sexual psychopath, and was still a menace to society, with little hope for recovery.

December 15, 1952, the court found defendant to be still a sexual psychopath, still a menace to the health and safety of others, and committed him to the Department of Mental Hygiene, for placement at Terminal Island—all in accordance with the provisions of section 5519 of the Welfare and Institutions Code.

No appeal was taken from this order, and it is now final.

This brings us to a consideration of the only question before this court: Should the attorney general's motion to dismiss defendant's appeal be granted?

Inasmuch as the motion was finally granted, and the proceedings which defendant himself requested were set in motion, the appeal from the order of July 23, 1952, should be dismissed.

The following facts are necessary to an understanding of this situation: From the date of filing of defendant's motion to the date of the hearing on December 15th, the minutes show that the case was before the superior court several times:

September 19, 1952, when the superintendent of Mendocino State Hospital was directed to forward his opinion; October 24th, when the report was received, and defendant ordered returned to the committing court; November 5th, when the matter was continued for further proceedings, and transferred to a trial department of the court; November 17th, when the medical experts were appointed, defendant's motion to vacate the psychopathy proceedings was denied, and the case continued for hearing to December 15th.

On November 17th defendant filed two documents. One he called ''Motion to annul, vacate, and set aside further psychop-

athy proceedings.'' The other, ''Notice of Appeal from the order denying to annul, etc.'' Treating the last document as a notice of appeal, it must, of course, apply to the court's order of November 17th, denying defendant's motion to annul and vacate the psychopathy proceedings.

The appeal from the order of November 17, 1952, must also be dismissed. ▉ The law does not permit appeals from interlocutory orders. The rule in criminal cases is discussed in *People* v. *Barnett,* 27 Cal.2d 649 [166 P.2d 4], and in 3 Cal. Jur.2d 539. ▉ Sexual psychopathy proceedings being civil in nature (*In re Keddy,* 105 Cal.App.2d 215 [233 P.2d 159]), the rule is the same. The order of December 15, 1952 was the final judgment in this case. ▉ The order of November 17th was interlocutory and not final. (Code Civ. Proc., § 963; *Bixby* v. *California Trust Co.,* 33 Cal.2d 495 [202 P.2d 1018].)

Defendant indulges in a not unnatural, but nonetheless complete misunderstanding, so far as his legal status is concerned. For if he ever is returned to the superior court, because the superintendent of a mental hospital and the Director of Mental Hygiene are of the opinion, either that he is cured, or that he is no longer a fit subject for confinement in a mental hospital, then it will become the duty of the judge of the superior court to pronounce judgment on his plea of guilty and commit him to state's prison. It is difficult to conceive of any set of facts which would ever justify or permit probation in this case. (Welf. & Inst. Code, §§ 5517, 5518; *People* v. *Tipton,* 90 Cal.App.2d 103 [202 P.2d 330].)

▉ As this court observed in *People* v. *Wells,* 112 Cal. App.2d 672 [246 P.2d 1023], one of the purposes of California's Sexual Psychopathy Law is to protect children from degenerates. The law was never intended to be a legal bypass whereby certain privileged perverts might be kept in mental hospitals for a short time and then released. The only possible advantage to a person adjudged to be a sexual psychopath after conviction is that his confinement may be in a mental institution, rather than in a prison of maximum security. (See *In re Stone,* 87 Cal.App.2d 777 [197 P.2d 847], and amendments to Welf. & Inst. Code, § 5501, made in 1949. And note the imperative duty of trial courts and district attorneys to insist upon *convictions* in these cases whenever possible.)

In the proper administration of the Sexual Psychopathy Law there should be no hope of early release for any sexual

psychopath. Indeed, it would seem but fair that such persons should understand that their time of confinement may well be equal at least to time they would have served in state's prison for violation of the law, plus time spent in mental hospitals.

Both attempts to appeal are herein set forth because the clerk of the superior court erroneously made an extra file, *Gross* v. *Tipton*, No. 39063. All proceedings in this case should be filed in the criminal case, *People* v. *Walter Gross*, No. 117937.

The appeals from the orders of July 23, 1952, and November 17, 1952, are dismissed.

White, P. J., and Doran, J., concurred.