Filed 12/6/22

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>E.M.,<br><br>    Defendant and Appellant. | H049467<br>(Santa Clara County<br>Super. Ct. No. 92934) |

E.M. is serving a sentence of 79 years four months in prison based on his convictions for numerous offenses as found by a jury in 1984. In December 2019, the Secretary of the California Department of Corrections and Rehabilitation (the Secretary) issued a letter to the trial court recommending that it recall E.M.'s sentence and resentence him based on recent ameliorative legislative changes in the sentencing law. The trial court denied recall on the ground that the legislative changes did not apply to E.M.'s case because his sentence was final.

E.M. appeals from the trial court's denial of recall. He argues the trial court erred in several respects, including its ruling that recent changes in the sentencing law do not apply to his case. The Attorney General initially conceded that we must remand for resentencing, but after the parties had briefed the merits of the issue, the Secretary issued a new letter to the trial court rescinding its recommendation of recall and resentencing. The Attorney General now argues this appeal is moot because the Secretary's letter of rescission eliminated the trial court's jurisdiction to recall the sentence on remand.

For the reasons below, we hold the Secretary's letter of rescission does not moot this appeal. We further hold the trial court erred by denying recall, and that it retains

jurisdiction to recall and resentence E.M. on remand. We will reverse the judgment and remand for the trial court to reconsider whether to recall E.M.'s sentence under the law as currently enacted.

## I. PROCEDURAL BACKGROUND

In 1984, a jury found E.M. guilty on 15 counts: counts 1, 2, and 8—first degree robbery (Pen. Code, § 211; former § 213.5)[1]; count 3—attempted first degree robbery (§§ 211, 664; former § 213.5); counts 4, 9, and 13—forcible oral copulation (former § 288a, subd. (c)); counts 5 through 7, 10, and 11—forcible false imprisonment (§ 236; former § 237); count 12—forcible penetration by a foreign object (§ 289, subd. (a)); count 14—forcible rape (former § 261, subd. (2)); and count 15—second degree robbery (§ 211).[2] As to counts 1 through 3, 5 through 8, 10, 11, and 15, the jury found E.M. personally used a deadly and dangerous weapon (§ 12022, subd. (b)). As to counts 4, 9, and 12 through 14, the jury found E.M. used a deadly weapon (§ 12022.3, subd. (a)). It was further found that E.M. had suffered two prior serious felony convictions and had served a prior prison term for forcible oral copulation (§§ 667, subd. (a), 667.6, subd. (a)). The trial court imposed an aggregate sentence of 79 years four months in prison. The sentence included two five-year terms for the prior serious felony convictions.

In December 2019, the Secretary recommended to the trial court that it recall E.M.'s sentence and resentence him under former section 1170, subdivision (d).[3] The Secretary's letter cited a recent legislative change to section 1385 that granted trial courts the discretion to dismiss a prior serious felony enhancement in furtherance of justice.[4]

---

[1] Subsequent undesignated statutory references are to the Penal Code.

[2] The facts of the offenses are not in the record.

[3] The Legislature subsequently amended the recall and resentencing provision of section 1170 to section 1170.03 and then renumbered it as section 1172.1. (Stats. 2022, ch. 58 (Assem. Bill No. 200) § 9).) For clarity, we cite section 1172.1 to refer to the current version of the provision, and we cite "former section 1170(d)" to refer to subdivision (d) of section 1170 as it existed prior to the recent legislation.

[4] Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Senate Bill 1393).

In May 2021, the public defender appeared on behalf of E.M., requested a hearing on the matter, and filed exhibits in support of recall detailing E.M.'s good conduct while in custody. The trial court then filed an order appointing the public defender to represent E.M. and invited him to submit any additional materials in support of recall. The court's order declined to recall the sentence "at this time" and ordered that the "defendant shall not be transferred from state prison to county jail and shall not be produced for any potential future hearings unless expressly ordered by this Court." In June 2021, the prosecution filed an objection to recalling E.M.'s sentence.

In September 2021, the trial court denied recall in a written order. The court ruled that although Senate Bill 1393 applied retroactively to cases that were not yet final, E.M.'s case was final, making him ineligible for relief. The court stated, "While this Court recognizes that a recommendation from the Secretary of the CDCR provides a court with the authority to recall a sentence, the Court declines to use that authority in a manner that is inconsistent with the law." E.M. timely appealed from this order.

In June 2022, after the parties had briefed the matter on appeal, the Secretary issued a letter to the trial court purporting to rescind the Secretary's prior recommendation of recall. The Secretary's letter stated, "I have personally reviewed inmate [E.M.]'s case factors and do not support the prior recommendation for a sentencing recall."

The Attorney General then moved this court to augment the record with the Secretary's June 2022 letter of rescission, or alternatively, to take judicial notice of it. The Attorney General argued that the Secretary's letter of rescission rendered this appeal moot because the trial court no longer had jurisdiction to resentence E.M. on remand.

We granted the motion to take judicial notice of the Secretary's June 2022 letter, and we ordered the parties to brief the following issues: (1) whether the Secretary has the authority to rescind a recommendation for recall and resentencing made in accordance

3

with section 1172.1, and if so, (2) whether the Secretary's June 2022 letter renders this appeal moot.[5]

## II. Discussion

In his opening brief, E.M. argued the trial court erred in denying recall, and he requested we remand for the court to consider whether to recall his sentence and resentence him under the procedures set forth in the newly-enacted section 1172.1. Although the parties disagreed on the reasoning for why the law compelled remand, the Attorney General conceded remand was required.

The Secretary then issued a letter to the trial court purporting to rescind her recall recommendation. The Attorney General now contends this appeal is moot because the trial court no longer has jurisdiction to recall E.M.'s sentence under section 1172.1. E.M. argues the Secretary had no legal authority to rescind her recommendation.

For the reasons below, we conclude this appeal is not moot. We further conclude the trial court erred in its denial of recall.

### A. *Legal Background*

Under subdivision (a)(1) of section 1172.1, "When a defendant, upon conviction for a felony offense, has been committed to the custody of the Secretary of the Department of Corrections and Rehabilitation . . ., the court may, within 120 days of the date of commitment on its own motion, at any time upon the recommendation of the secretary . . ., recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced . . . ." (§ 1172.1, subd. (a)(1).) In enacting this code section, the Legislature amended and renumbered former section 1170(d), which had included the above-quoted language.

Former section 1170(d) provided "an exception to the common law rule that the court loses resentencing jurisdiction once execution of sentence has begun." (*Dix v.*

---

[5] We also grant the Attorney General's unopposed request for judicial notice filed September 13, 2022. (Evid. Code, §§ 451, 452, subds. (b) & (c).)

4

*Superior Court* (1991) 53 Cal.3d 442, 455 (*Dix*).) "[T]he resentencing authority conferred by section 1170(d) is as broad as that possessed by the court when the original sentence was pronounced," except that the resentence may not exceed the original sentence, and the court must award credit for time served on the original sentence. (*Id.* at p. 456.) "A trial court, upon receiving a section 1170, subdivision (d)(1) letter from the CDCR, has broad discretion whether to recall the existing sentence and resentence the incarcerated individual. '[T]he Secretary's recommendation letter is but an invitation to the court to exercise its equitable jurisdiction[,]' which 'furnishes the court with the jurisdiction it would not otherwise possess to recall and resentence[.]' [Citation.]" (*People v. Cepeda* (2021) 70 Cal.App.5th 456, 469.)

We apply the abuse of discretion standard of review to a trial court's denial of recall. (*People v. Frazier* (2020) 55 Cal.App.5th 858, 863-864 (*Frazier*); *People v. McCallum* (2020) 55 Cal.App.5th 202, 211 (*McCallum*).) We review questions of statutory interpretation de novo. (*People v. Prunty* (2015) 62 Cal.4th 59, 71.)

### B. *The Appeal Is Not Moot*

As set forth above, after the parties had briefed the merits of E.M.'s claim on appeal, and two years after the Secretary's original recommendation of recall, the Secretary issued a letter to the trial court rescinding the recommendation. The Attorney General now argues the appeal is moot because the Secretary validly exercised her power to rescind the recommendation and the trial court is now barred from resentencing E.M. E.M. contends the Secretary had no authority to rescind her recommendation under section 1172.1 because the sole purpose of the Secretary's recommendation is to revive the trial court's sentencing jurisdiction, and nothing in the plain language of the statute allows for the rescission of a recommendation. The Attorney General argues that the plain language of the statute allows the Secretary to rescind her recommendation at any time prior to the trial court recalling the prisoner's sentence.

5

If the language of a statute is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. (*People v. Sanchez* (2021) 66 Cal.App.5th 14, 18.) We see nothing in the plain language that clearly gives the Secretary the power to rescind her recommendation. Section 1172.1 provides that the trial court may recall the sentence "at any time upon the recommendation of the secretary." (§ 1172.1, subd. (d)(1).) The phrase "*at any time upon the recommendation*" implies the trial court's power to recall continues indefinitely once it receives a recommendation from the Secretary. The plain language makes no mention of any power to rescind. "It is well established that it is not the proper function of the courts to supply legislative omissions from a statute in an attempt to make it conform to a presumed intention of the Legislature not expressed in the statutory language." (*Cemetery Board v. Telophase Society of America* (1978) 87 Cal.App.3d 847, 858.) In any event, we think the language of the statute is amenable to more than one reasonable interpretation.

Where the statutory language is amenable to more than one reasonable interpretation, we may consider other aids, such as the statute's purpose, legislative history, and public policy. (*People v. Reynoza* (2022) 75 Cal.App.5th 181, 186.) Neither party cites any legislative history for sections 1170 or 1172.1 that would support either interpretation, and we are aware of none. The Attorney General points to the predecessor statute—former section 1168, which contained similar language until 1976 when the Legislature modified it and moved it to section 1170—and related language in section 5079. (See *Dix*, *supra*, 53 Cal.3d at pp. 457-458; *Alanis v. Superior Court* (1970) 1 Cal.3d 784, 786, fn. 1.) The Attorney General cites language in section 5079 referring to the Secretary's power to modify or reject recommendations made by its own psychiatric and diagnostic clinics, but nothing in that statute or former section 1168 concerns the Secretary's power to rescind a recommendation the Secretary has already issued to a trial court.

The Attorney General asserts that the Secretary's power to issue a recommendation inherently includes the power to rescind it. For this position, the Attorney General relies on *In re Fain* (1976) 65 Cal.App.3d 376 (*Fain*). In *Fain*, a court of appeal held the Adult Authority, after granting parole to a prisoner and setting a prisoner's release date, had the power to rescind it. "Any deliberative body— administrative, judicial or legislative—has the inherent power to reconsider an action taken by it unless the action is such that it may not be set aside or unless reconsideration is precluded by law. [Citations.] The power of administrative reconsideration is consistent with the principle that ' "notions of administrative autonomy require that the agency be given a chance to discover and correct its own errors." ' [Citations.]" (*Id.* at p. 389.) This holding, however, was based in part on the observation that "[t]he actions of the Adult Authority, including those granting a parole and fixing a release date, are purely administrative in nature. [Citations.] They are thus not 'judicial functions' which may be restrained by a writ of prohibition." (*Id.* at p. 389.)

We conclude *Fain* is inapposite. Here, section 1172.1 gives courts the power to recall and resentence upon the Secretary's recommendation. Sentencing is not "purely administrative" in nature; it is primarily a judicial function, and our Supreme Court has construed former section 1170(d) accordingly. "[B]y enacting section 1170(d), the Legislature intended to retain, within the limits of determinate sentencing, the preexisting *judicial power* to recall and reconsider a sentence on individual grounds." (*Dix*, *supra*, 53 Cal.3d at p. 458, italics added.) In *Dix*, for example, the Supreme Court held that statutory limitations on the Secretary's administrative authority to reduce a prisoner's sentence do not "undermine the principle that the court, the primary determinate sentencing authority, has much broader statutory jurisdiction to reconsider its original sentence, even on the basis of subsequent events." (*Id.* at p. 463.)

The Attorney General takes the position that the trial court does not have jurisdiction until it actually recalls the sentence, such that the court's recall must be

7

"synchronous with the Secretary's current support for resentencing." Because the court never recalled the sentence and the Secretary withdrew her support for it, the Attorney General argues the trial court no longer has jurisdiction to order recall. But the trial court *did* act when it issued the order denying recall, and in doing so, the court exercised jurisdiction over the matter. If the matter had not been within the court's jurisdiction to adjudicate, E.M. could not have appealed the order denying recall. "A trial court order denying relief that the court has no jurisdiction to grant does not affect a defendant's substantial rights and is therefore not appealable under section 1237, subdivision (b)." (*People v. King* (2022) 77 Cal.App.5th 629, 639.) (See also *People v. Magana* (2021) 63 Cal.App.5th 1120, 1127-1128 [order denying resentencing not appealable because the trial court had no jurisdiction to grant defendant's motion for a resentencing]; *People v. Chlad* (1992) 6 Cal.App.4th 1719, 1725 [order denying resentencing was not appealable because the trial court was without jurisdiction to recall sentence].) By contrast, when a trial court denies recall in the exercise of its lawful jurisdiction, the order is appealable. (*People v. Mendez* (2021) 69 Cal.App.5th 347, 353; *Frazier*, *supra*, 55 Cal.App.5th at p. 863; see also *People v. Loper* (2015) 60 Cal.4th 1155, 1166 [trial court's denial of recall for "compassionate release" was an appealable order; an appealable order must be validly issued, and a sentencing order cannot be valid if the trial court lacks jurisdiction to issue it]). The trial court here had jurisdiction to grant relief, had the court found relief warranted, but the court instead exercised its jurisdiction in denying recall, long before the Secretary issued her letter of rescission. Furthermore, E.M. timely appealed from the order of denial, thereby vesting jurisdiction in *this* court long before the Secretary issued her letter of rescission. Whatever administrative powers the Secretary has under section 1172.1, it is unlikely the Legislature intended for them to intrude this far into the courts' jurisdiction over sentencing matters.

The Attorney General argues public policy reasons support the conclusion that the Secretary may rescind a recommendation. He argues it would lead to absurd

8

consequences if the Secretary "could not immediately rescind an improvidently sent letter that mistakenly recommended resentencing for a particular inmate."  But that is not what happened here.  The Secretary issued the rescission letter more than two years after the initial recommendation to resentence, and the rescission letter did not assert any administrative mistake or improvidence.  As set forth below, the basis for the Secretary's original recommendation—that a change in law allowed for the striking of a prior serious felony enhancement—was legally correct at the time, and it was still correct when the Secretary's sent her rescission letter.  Furthermore, the rescission letter did not cite any change in the circumstances of E.M.'s incarceration or offer any other objective explanation for why he would be less deserving of resentencing now.  The Secretary stated only that she had personally reviewed his file and she concluded it no longer supported the prior recommendation.

We need not decide whether the Secretary has the power to rescind a recommendation soon after issuing it and where the trial court has not yet acted on it; where a subsequent change in the prisoner's circumstances may support rescission; or where the initial recommendation was erroneously issued due to administrative improvidence.  None of those conditions are present in this case, and the Attorney General presents no legal authority for the proposition that the Secretary can reverse her recommendation months after the trial court has ruled and the matter is on appeal.

The Attorney General argues that separation of powers principles support the conclusion that the Secretary has the power to rescind her initial recommendation.  The Attorney General argues that any other interpretation of section 1172.1 would infringe on the executive branch's power to carry out prison sentences and the Legislature's power to establish fixed terms for crimes.  But the Legislature, by enacting section 1172.1, expressly gave trial courts jurisdiction to resentence prisoners under certain conditions, including the conditions the trial court acted upon here—that the Secretary recommended recall based on recent ameliorative changes in the law.  The Attorney General argues that

9

denying the Secretary to power to rescind a recommendation means that a trial court could "wait years before deciding whether to recall the initial sentence, and then recall the sentence even after the Secretary has expressly retracted the recommendation." But that is the opposite of what happened here: it was not the trial court who waited years but the Secretary who waited years before deciding to retract her recommendation, even after the trial court had expressly ruled on it.

Given this procedural history, if there are any separation of powers concerns, they weigh against the Attorney General's position. "The separation of powers doctrine limits the authority of one of the three branches of government to arrogate to itself the core functions of another branch. [Citations.] ' "The courts have long recognized that [the] primary purpose [of the separation-of-powers doctrine] is to prevent the combination in the hands of a single person or group of the basic or fundamental powers of government." ' [Citations.] To serve this purpose, courts ' "have not hesitated to strike down provisions of law that either accrete to a single Branch powers more appropriately diffused among separate Branches or that undermine the authority and independence of one or another coordinate Branch." ' [Citation.]" (*Carmel Valley Fire Protection Dist. v. State of California* (2001) 25 Cal.4th 287, 297 (*Carmel Valley*).) Accordingly, "In a system of separated powers, courts observe jurisdictional limits and focus scarce judicial resources on deciding cases within the scope of their authority." (*People v. Chavez* (2018) 4 Cal.5th 771, 779.)

The trial court's denial of recall is an appealable order, and E.M. timely appealed from it. The matter is therefore squarely within the scope of this court's authority and jurisdiction. Before the Secretary rescinded her recommendation, the parties had fully briefed the merits of the issues, and the Attorney General had conceded that E.M. was entitled to remand for the trial court to consider recalling his sentence under the procedures set forth in section 1172.1. After E.M. filed his reply brief accepting the Attorney General's concession, this court was prepared to rule on the matter, and for the

10

reasons set forth in section II.C below, we were prepared to grant the relief that both parties had agreed to. Only then did the Secretary purport to rescind her recommendation. If the Secretary were allowed to moot the appeal at this stage of the proceedings, E.M. would be denied the relief to which he was concededly entitled, and which we were prepared to grant. We do not agree that the separation of powers doctrine allows the Secretary to "undermine the authority and independence" of this court in such a fashion. (*Carmel Valley*, *supra*, 25 Cal.4th at p. 297.) (See, e.g., *City of Erie v. Pap's A.M.* (2000) 529 U.S. 277, 288 [court's interest in preventing litigants from attempting to manipulate the court's jurisdiction to insulate a favorable decision from review counsels against a finding of mootness].)

Accordingly, under the unique circumstances of this case, we hold that the Secretary's rescission letter does not eliminate the trial court's jurisdiction to recall and resentence E.M. under section 1172.1 at this stage in the proceedings. And for the reasons set forth in section II.C below, we will reverse the denial of recall and remand for the trial court to reconsider resentencing. On remand, the trial court shall retain jurisdiction to grant or deny recall of the sentence, and with this relief, the appeal is not moot. "An appeal becomes moot when an event occurs which, *through no fault of the respondent*, renders any appellate decision ineffective in providing the parties relief." (*Whyte v. Schlage Lock Co.* (2002) 101 Cal.App.4th 1443, 1451, citing *Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541, italics added.) We note that on remand nothing would prohibit the trial court from giving weight to the Secretary's most recent recommendation as one factor in the court's analysis. (See *McCallum*, *supra*, 55 Cal.App.5th at p. 210, quoting *Dix*, *supra*, 53 Cal.3d at p. 456 [in deciding whether to recall a sentence, the trial court may exercise its authority "for any reason rationally related to lawful sentencing"].)

### C. *The Trial Court Erred in Denying Recall*

As set forth above, the Secretary's recommendation to recall E.M.'s sentence was based on the enactment of Senate Bill 1393 in 2019, which gave sentencing courts the discretion to dismiss or strike a prior serious felony conviction. E.M.'s sentence included such enhancements. Without holding a hearing on the matter, the trial court denied recall on the sole ground that Senate Bill 1393 did not apply retroactively to E.M.'s case because it was final on appeal. E.M. contends the trial court misconstrued the law and erred in several other ways based on the procedural requirements of newly enacted section 1172.1.

### 1. *Penal Code Section 1172.1*

Effective January 1, 2022, Assembly Bill No. 1540 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 719, §§ 1-7) (Assembly Bill 1540) renumbered the recall and resentencing provisions of former section 1170(d)(1) and amended the language governing the procedural requirements, which are now set forth in section 1172.1. Section 1172.1 provides in part, "The court, in recalling and resentencing under this subdivision, shall apply the sentencing rules of the Judicial Council and apply any changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.1, subd. (a)(2).)

Section 1172.1, subdivision (a)(4) sets forth a list of factors—some permissive and some mandatory—for the court to consider in recalling and resentencing. The court may consider "postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (§ 1172.1, subd. (a)(4).) And the court *shall* consider "if the defendant has experienced psychological, physical, or childhood trauma, including, but

not limited to, abuse, neglect, exploitation, or sexual violence, if the defendant was a victim of intimate partner violence or human trafficking prior to or at the time of the commission of the offense, or if the defendant is a youth or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense, and whether those circumstances were a contributing factor in the commission of the offense." (§ 1172.1, subd. (a)(4).)

Furthermore, "Resentencing shall not be denied, nor a stipulation rejected, without a hearing where the parties have an opportunity to address the basis for the intended denial or rejection." (§ 1172.1, subd. (a)(8).) The trial court must provide notice to the defendant, set a status hearing within 30 days of receiving the Secretary's recommendation, and appoint counsel to represent the defendant. (§ 1172.1, subd. (b)(1).) The statute includes a presumption in favor of recall and resentencing, which may only be overcome if the court finds the defendant is an unreasonable risk of danger to public safety as defined in subdivision (c) of Section 1170.18. (§ 1172.1, subd. (b)(2).)

### 2. Remand is Required for the Trial Court to Consider Recall and Resentencing Under Penal Code Section 1172.1

E.M. contends section 1172.1 applies to this case and that the trial court's denial of recall failed to adhere to the requirements of that statute. Specifically, he contends the trial court failed to hold a hearing before ruling as required under subdivision (a)(8); failed to apply the presumption in favor of recall set forth in subdivision (b)(2); failed to consider the statutory factors set forth in subdivision (a)(4); and erred by ruling that Senate Bill 1393 did not apply, contravening subdivision (a)(2)'s mandate that the court apply certain ameliorative changes in the sentencing law.

Because the trial court denied recall prior to the effective date of section 1172.1, E.M.'s claims raise the question whether section 1172.1 applied to his case. E.M. contends section 1172.1 applied because the Legislature intended it as a clarification of

13

the law in place at the time the trial court ruled. Alternately, he contends it would apply retroactively under the doctrine of *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*). Even assuming section 1172.1 does not apply retroactively, E.M. contends the trial court abused its discretion under former section 1170(d).

The Attorney General contends the retroactivity doctrine of *Estrada* does not make section 1172.1 retroactive, but he concedes the Legislature enacted it at least in part with the intention to clarify then-existing law. Without squarely addressing the issue, the Attorney General opines that this "raises substantial questions about how best to interpret section 1170, subdivision (d)(1)." The Attorney General further concedes that "considerations of judicial efficiency counsel in favor of applying [section 1172.1] procedures in this case."

The Attorney General's concession, as far as it goes, is well-taken. "If an amendment ' " 'which in effect construes and clarifies a prior statute' " ' was adopted soon after controversies arose about the proper interpretation of the statute, ' " 'it is logical to regard the amendment as a legislative interpretation of the original act—a formal change—rebutting the presumption of substantial change.' " ' [Citation.] When a case involving such a clarifying amendment is on appeal, the appropriate resolution is to reverse and remand the matter for further proceedings in compliance with the amended legislation. [Citation.]" (*People v. McMurray* (2022) 76 Cal.App.5th 1035, 1039 (*McMurray*).) The court of appeal in *McMurray* held that the legislative history of Assembly Bill 1540 shows it was the Legislature's intent to clarify the former statute's procedural requirements and its application to "ameliorative laws ... that reduce sentences or provide for judicial discretion, regardless of the date of the offense of conviction." (*Id.* at p. 1038.) "The legislative history further indicates that Assembly Bill 1540 was intended to clarify certain aspects of former section 1170(d)(1) that the appellate courts had incorrectly interpreted, including that, 'when a sentence is recalled or reopened for any reason, in resentencing the defendant trial courts must apply ["]any changes in law

14

that reduce sentences or provide for judicial discretion." ' [Citation]." (*Id.* at p. 1041.) Under *McMurray*'s interpretation of section 1172.1, the trial court here wrongly concluded it would be "inconsistent with the law" to recall and resentence E.M. based on the ameliorative effect of Senate Bill 1393.

Even before the enactment of Assembly Bill 1540, other courts of appeal held that former section 1170(d) allowed for recall and resentencing based on recent changes in law that would be ameliorative with respect to cases that were final on appeal. "We conclude that, upon the recommendation of the Secretary of CDCR (the Secretary), trial courts have the authority to recall and resentence defendants based on post-judgment changes in the law giving courts discretion to strike or dismiss enhancements, even when the judgment in the case is long since final and even when the original sentence was the product of a plea agreement." (*People v. Pillsbury* (2021) 69 Cal.App.5th 776, 782 (*Pillsbury*).) Another court reached the same conclusion in *People v. Cepeda* (2021) 70 Cal.App.5th 456 (*Cepeda*) [former section 1170(d) allowed the trial court, upon recommendation by the CDCR, to apply Senate Bill 1393 to cases that are already final].)

We agree with the reasoning of *McMurray*, *Pillsbury*, and *Cepeda*. We adopt the holdings of those courts, and we conclude the trial court erred by denying recall on the erroneous premise that Senate Bill 1393 did not apply to E.M.'s case. This conclusion follows regardless of whether section 1172.1 controlled, as held in *McMurray*, or whether former section 1170(d) applied, as in *Pillsbury* and *Cepeda*. Furthermore, the Attorney General concedes section 1721.1 would apply on remand. Accordingly, we will reverse the order denying recall and remand for the trial court to consider the matter under section 1172.1.

## III.    DISPOSITION

The order denying recall is reversed, and the matter is remanded to the trial court to consider whether to recall E.M.'s sentence and resentence him in accordance with Penal Code section 1721.1.

_____
Greenwood, P. J.

WE CONCUR:

_____
Grover, J.

_____
Wilson, J.

People v. E.M.
H049467

Trial Court:                          Santa Clara County Superior Court
                                      Superior Court No: 92934


Trial Judge:                         The Honorable Elizabeth C. Peterson


Attorneys for Defendant and Appellant
E.M.:                                David W. Beaudreau under
                                     appointment by the Court of Appeal for
                                     Appellant




Attorneys for Plaintiff and Respondent    Rob Bonta,
THE PEOPLE:                               Attorney General of California

                                          Lance E. Winters,
                                          Chief Assistant Attorney General

                                          Jeffrey M. Laurence,
                                          Senior Assistant Attorney General

                                          Phillip J. Lindsay,
                                          Senior Assistant Attorney General

                                          Sara J. Romano,
                                          Supervising Deputy Attorney General

                                          Amit Kurlekar,
                                          Deputy Attorney General

                                          Victoria Ratnikova,
                                          Deputy Attorney General

                                          Brian C. Kinney
                                          Deputy Attorney General


People v. E.M.
H049467